IN THE UNITED STATES DISTRICT COURTS FOR
THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

ELSA CONTRERAS,
    Plaintiff,

v.                                                Cause No. 3:25-cv-00136

LOYAL SOURCE GOVERNMENT SERVICES LLC,
    Defendant.

PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff ELSA CONTRERAS ("Employee Contreras" or "Plaintiff") now files Plaintiff's Original Complaint against Defendant LOYAL SOURCE GOVERNMENT SERVICES LLC ("Employer LSGS" or "Defendant"), and respectfully shows as follows:

I. PARTIES

1.     Plaintiff, Elsa Contreras, is a natural person residing in El Paso County, Texas.

2.     Defendant, Loyal Source Government Services LLC, is a foreign limited liability company organized under the laws of the State of Florida, and may be served with process by serving its registered agent, Registered Agent Solutions, Inc., at Corporate Center One, 5301 Southwest Parkway, Suite 400, Austin, TX 78735, or wherever it may be found.

II. JURISDICTION

3.     Jurisdiction is proper in this Honorable Court based on federal question jurisdiction.

III. CHRONOLOGY OF FACTS

4.     Employers must prevent bigoted supervisors from treating employees differently just because of their race to protect employees, like us all, from emotional traumas and

financial losses from illegal discrimination.

5. Employers must prevent job retaliation against employees who oppose and report illegal racial discrimination at work and protect employees, like us all, from emotional trauma and financial losses.

6. Loyal Source Government Services LLC is an employer.

7. Employer LSGS must prevent its bigoted supervisors from treating employees differently just because of their race to protect employees from emotional traumas and financial losses from race discrimination.

8. Employer LSGS must prevent job retaliation against employees who oppose and report illegal racial discrimination at work and protect employees from emotional trauma and financial losses.

9. On or about October 5, 2022, Employer LSGS hires an Employee as a Human Resources Manager. Employer LSGS is aware the Employee is a Latina -- a Hispanic, Mexican-American woman.

10. On or about March-April 2023, Employer LSGS Regional Manager Roger Wright, who is white/Caucasian, attends a Microsoft Teams meeting with multiple team members and managers in attendance, where the Employee is presenting on protocols regarding the Americans with Disabilities Act ("ADA").

11. During the meeting, Employer LSGS Regional Manager Roger Wright publicly confronts the Employee, stating in the Teams meeting that if HR denies a request from any staff member in Wright's region, Wright will override HR's decision and approve the request, even if the request does not qualify under the ADA. Wright states this very aggressively and in a way that undermines the Employee and the Employee's authority as an HR

manager.

12. After the Teams meeting ends, Employer LSGS Employee Relations Manager Danielle Adams and Employer LSGS Human Resources VP Amanda Aubin both receive the Employee's complaint about Wright's conduct.

13. Employer LSGS Employee Relations Manager Danielle Adams and Human Resources VP Amanda Aubin refuse to investigate the Employee's complaint.

14. On or about July 20, 2023, Employer LSGS Corporate Executive Jerry MacLellan, who is white/Caucasian, yells at the Employee during a phone call.

15. On or about that same day, July 20, 2023, Employer LSGS Employee Relations Manager Danielle Adams receives the Employee's complaint about MacLellan's conduct.

16. Employer LSGS Employee Relations Manager Danielle Adams refuses to investigate the Employee's complaint.

17. On or about July 28, 2023, Employer LSGS Employee Relations Manager Danielle Adams, who is African-American, sends, via Microsoft Teams, the Employee a complaint against Regional Manager Roger Wright, accusing Wright of publicly undermining Adams in a Teams meeting -- the same conduct which the Employee complained of and opposed. Employer LSGS fully investigates Adams's complaint and issues a disciplinary write-up to Wright for Wright's treatment of Adams.

18. On or about July 31, 2023, Employer LSGS Employee Relations Manager Danielle Adams receives the Employee's complaint that two Managers, Henry Ochoa and Elias Velero, aggressively confronted the Employee, saying the Employee was being too diligent in investigating complaints about managers, and calling the Employee "the whipping post".

19. Employer LSGS Employee Relations Manager Danielle Adams refuses to investigate the Employee's complaint. Instead, Employee Relations Manager Adams waves away the Employee's complaints, telling the Employee "just remember, this is about partnerships and support", that the Employee should not be complaining about this, and that the Employee should take it as an opportunity to coach them and support them.

20. On March 16, 2024, Employer LSGS Employee Relations Manager Danielle Adams and Human Resources VP Amanda Aubin receive the Employee's notation in the Employee's performance review that the Employee intends to advance at Employer LSGS, and specifically wants to be promoted to a higher management position.

21. On or about October 30, 2024, Employer LSGS Employee Relations Specialist Connie Lynn, who is white/Caucasian and works underneath the Employee, yells at the Employee, demanding that the Employee consult with Lynn before undertaking the Employee's tasks.

22. That same day, October 30, 2024, Employer LSGS Human Resources VP Amanda Aubin receives the Employee's complaint, via Microsoft Teams, about Employee Relations Specialist Connie Lynn's behavior, and specifically that Lynn treats the Employee as if Lynn is the Employee's manager, when Lynn is not.

23. Also that same day, October 30, 2024, Employer LSGS Human Resources VP Amanda Aubin, HR Director Joanna Johnson, and Employee Relations Manager Danielle Adams receive, via e-mail, the same complaint the Employee sent Aubin over Microsoft Teams -- complaining about Employee Relations Specialist Connie Lynn's behavior, and specifically that Lynn treats the Employee as if Lynn is the Employee's manager, when Lynn is not.

24. But Employer LSGS Human Resources VP Amanda Aubin, HR Director Joanna Johnson, and Employee Relations Manager Danielle Adams refuse to investigate the Employee's complaint.

25. On or about November 2, 2024, Employer LSGS CEO Leigh Pace and HR VP Amanda Aubin receive the Employee's complaint, via e-mail, that Employer LSGS is discriminating against the Employee because of the Employee's race -- Hispanic/ Mexican-American. Specifically, the Employee complains that Employer LSGS refuses to investigate or take action on any of the Employee's complaints, but Employer LSGS does investigate and take action on complaints made by non-Latina, non-Hispanic, non-Mexican-American employees. The Employee makes this complaint to oppose what the Employee believes, in good faith, to constitute race discrimination in the workplace.

26. On November 4, 2024, Employer LSGS Human Resources VP Amanda Aubin tells the Employee that Aubin sent the Employee's November 2 good-faith complaint opposing race discrimination to Employer LSGS Senior Director of Compliance and Strategic Operations Jordan Ziegler, in Employer LSGS's legal department.

27. That same day, November 4, 2024, Senior Director of Compliance and Strategic Operations Jordan Ziegler tells the Employee that Ziegler will investigate the Employee's November 2 good-faith complaint opposing race discrimination.

28. On November 6, 2024, Employer LSGS Corporate Paralegal Javier Rodriguez and Senior Director of Compliance and Strategic Operations Jordan Ziegler have a video conference with the Employee, but ask the Employee about only a small portion of the Employee's complaint, focusing mainly on the Employee's professional background and how long the Employee has worked at Employer LSGS.

29. On or about November 2024, after the November 6 video conference, Employer LSGS Corporate Paralegal Javier Rodriguez and Senior Director of Compliance and Strategic Operations Jordan Ziegler have another video conference with the Employee where Rodriguez and Ziegler both receive the Employee's complaint that the Employee and Lorena Ruiz -- the only other Latina, Hispanic, Mexican American woman on the Employee's team -- are both treated differently from other team members who are not Hispanic/Mexican-American. Specifically, Rodriguez and Ziegler both receive the Employee's complaint that Employer LSGS never follows up on complaints made by the Employee or Ruiz, while LSGS fully investigates complaints made by Caucasian and African-American team members. In particular, Employer LSGS Employee Relations Manager Danielle Adams, who is African-American, always supports complaints made by the Caucasian and African-American team members, while ignoring the Employee's complaints or concerns.

30. Rodriguez and Ziegler also receive the Employee's complaint that Lorena Ruiz called the Employee crying about how Danielle Adams would minimize Ruiz's work and that Ruiz believed Adams treated Ruiz differently because of Ruiz's race -- Hispanic/Mexican-American.

31. During the same video conference, Rodriguez and Ziegler receive the Employee's complaint that whenever Employee Relations Manager Danielle Adams received a complaint from the Employee, Adams would ask the Employee whether the Employee was competent or able to handle the job.

32. The Employee makes this complaints in order to oppose what the Employee believes, in good faith, to constitute race discrimination in the workplace.

33. During the same video conference, Rodriguez and Ziegler tell the Employee that Employer LSGS's needs come first.

34. On or about mid- to late-November 2024, Employer LSGS hires a new employee for a higher management position above the Employee. The new hire is African-American, with less experience and education than the Employee. Specifically, Employer LSGS is aware the Employee has a Master's Degree in Business Administration and Human Resources, while the new African-American hire has an Associate's Degree.

35. Employer LSGS does not consider the Employee for the higher management position even though the Employee had asked to apply to the position to both Employee Relations Manager Danielle Adams and Senior HR Director Carianne Reggio, who is white/Caucasian.

36. On or about mid- to late-November 2024, Employee Relations Manager Danielle Adams announces to the Employee's team that Employer LSGS will hire a new HR manager -- the Employee's position.

37. On or about mid- to late-November 2024, during a group meeting, Employee Relations Manager Danielle Adams states "some people are complaining too much and creating their own narrative" in reference to Employee.

38. On November 19, 2024, Employer LSGS Corporate Paralegal Javier Rodriguez and Senior Director of Compliance and Strategic Operations Jordan Ziegler, both of whom work in Employer LSGS's legal department, call the Employee on a video conference. In the video conference, Ziegler tells the Employee that the Employee's complaints opposing what the Employee believed in good faith to be race discrimination were investigated.

**39. Ziegler continues the discussion, which was recorded, where in Ziegler's**

**next sentence Ziegler tells the Employee that *because* the Employee made complaints opposing what the Employee in good faith believed to constitute illegal race discrimination in the workplace, and Employer LSGS determined the complaints to be "unfounded", LSGS decided Employee's "role is just not working out, and it's not a good fit." Employer LSGS Senior Director of Compliance and Strategic Operations Jordan Ziegler then terminates the Employee.**

40. Employee had been working at Employer LSGS for over a year. Between Employee's complaints of illegal discrimination, as related herin, and Employer LSGS's termination for purportedly "not working out" and that Employee was now "not a good fit", Employee was not disciplined or written up for any reason.

41. In response, in the same recorded discussion, Employee disputes the termination to Senior Director of Compliance and Strategic Operations Ziegler:

> I have never been let go from anywhere, nor have I ever been written up, so it's a little shocking… I know that I didn't do anything wrong…when I reached out I wasn't really looking for any kind of trouble. On the contrary I just wanted to make sure that I completed my responsibilities as an employee, which was to if I see something say something and report it accordingly, right, but I see that the decision has already been made. … I just wanted to come to work, do my job, and just be able to work in peace like without that hostile environment and other items, but, no…

42. When Senior Director of Compliance and Strategic Operations Ziegler hears this from Employee, Ziegler vaguely says "it was just not a good fit. Ultimately, yeah, ultimately it wasn't a good fit."

43. Senior Director of Compliance and Strategic Operations Ziegler then receives Employee's request for the ***reason*** why Employer LSGS now believes the Employee "wasn't a good fit", but Ziegler refuses to provide one. This part of the conversation goes

as follows:

> Employee: And then Loyal Source won't disclose the [']not a good fit reason['] I'm assuming?

> Ziegler: Correct.

44. Employer LSGS replaces the Employee with an African-American employee.

45. After the termination, Employer LSGS refuses to pay the Employee for the Employee's PTO, and only pays the Employee for the two days the Employee worked during the last pay period. But, when Employer LSGS terminates other employees who are not terminated because of their race or in retaliation for making good-faith complaints opposing illegal race discrimination in the workplace, Employer LSGS pays those employees their PTO and for the entire pay period in which the termination occurred.

46. After the termination, Employer LSGS further discriminates and retaliates against the Employee by falsely reporting to the Texas Workforce Commission that LSGS fired the Employee for misconduct, which was false.

47. That Employee is Elsa Contreras.

IV. CAUSES OF ACTION

### RACE DISCRIMINATION

48. As described above, Defendant, by and through Defendant's agents, intentionally and knowingly discriminated against and harassed Plaintiff, a United States citizen, merely because of Plaintiff's race and color in violation of 42 U.S.C. §1981.

49. Thus, Defendant sponsored, encouraged, and condoned Defendant's agents' discrimination and harassment of Plaintiff.

### RETALIATION

50. As described above, Defendant, by and through Defendant's agents, intentionally and

knowingly retaliated against and harassed Plaintiff, in violation of 42 U.S.C. §1981, merely because Plaintiff reported, opposed, and witnessed racial harassment and discrimination in the workplace.

51.    Thus, Defendant sponsored, encouraged, and condoned Defendant's agents' retaliation and harassment of Plaintiff.

## V. DAMAGES AND LOSSES

52.    As a direct and proximate result of Defendant's discrimination, retaliation, and conduct against Plaintiff as described above, Plaintiff has suffered harms and losses. Plaintiff's harms and losses include in the past and the future: lost wages and benefits; employment opportunities; lost income; loss of earning capacity; mental anguish; emotional pain and suffering; inconvenience; loss of enjoyment of life; and other non-pecuniary losses.

## VI. EXEMPLARY DAMAGES

53.    Defendant is liable for punitive damages for violations of 42 U.S.C. §1981.

## VII. ATTORNEY'S FEES

54.    Pursuant to 42 U.S.C. §1988(b), Plaintiff is entitled to reasonable attorney's fees and reasonable expert fees as costs in prosecuting this lawsuit.

## VIII. JURY DEMAND

55.    Plaintiff requests that this case be decided by a jury as allowed by Federal Rule of Civil Procedure 38.

## IX. COURT COSTS

56.    Plaintiff is entitled to recover Plaintiff's court costs.

## X. PRAYER

57.    Plaintiff respectfully prays that Plaintiff recover from Defendant, under 42 U.S.C. §1981,

actual damages, including but not limited to, past and future lost earnings, mental anguish and inconvenience, emotional pain and suffering, loss of enjoyment of life, bodily injury, pain and suffering, economic damages and benefits in the past and future, compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, attorney fees, costs, and such other and further relief to which Plaintiff may show herself to be justly entitled, in law and in equity.

SIGNED on April 18, 2025.

Respectfully submitted,

**Chavez Law Firm**
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772

By:   /s/Enrique Chavez, Jr.
      Enrique Chavez, Jr., State Bar No. 24001873
      enriquechavezjr@chavezlawpc.com
      Michael R. Anderson, State Bar No. 24087103
      manderson@chavezlawpc.com
      Michael M. Osterberg, State Bar No. 24108991
      mikeosterberg@chavezlawpc.com
      *Attorneys for Plaintiff*